LAW OFFICE OF MICHAEL L. FRADIN
Michael L. Fradin, Esq.
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KATHERINE WARDEN, | Case No. _____ |
| Plaintiff, | |
| v. | **PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL** |
| RODNEY HUPP; | |
| and | Presiding Judge _____ |
| THE CITY OF MARIETTA, OHIO, | Magistrate Judge _____ |
| Defendants. | |

## I.   INTRODUCTION

Now Comes Plaintiff Katherine Warden bringing this lawsuit to remedy the practices of sexual harassment, gender discrimination, retaliation, and related abuses at the Marietta Police Department, the police department that operates under the authority Defendant City of Marietta, Ohio. Plaintiff Warden was subjected to sexual harassment, gender discrimination, and retaliation by former Chief of Police for the City of Marietta, Ohio, Defendant Rodney Hupp. This lawsuit seeks to ensure that female employees of the Marietta Police Department and the City of Marietta can perform their

job duties with dignity, free from humiliation or fear of discrimination, by ending sexual harassment and gender discrimination as practiced by Defendant Hupp.

## II.     NATURE OF THIS ACTION

Plaintiff Warden files this action pursuant to 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 ("Title VII"), the Ohio Revised Code ("O.R.C."), and Ohio common law.

## III.     PARTIES

### A. Plaintiff

1.     Plaintiff Katherine Warden ("Plaintiff") is a 41-year-old female who has been employed as a police officer by Defendant City of Marietta from on or around August 13, 2001 until the present. Plaintiff was hired as a patrolman in 2001 and in 2015 was promoted to Sergeant, making her the first female sergeant in the history of the Marietta Police Department. Plaintiff Warden resides in the State of Ohio.

### B. Defendants

2.     Defendant Rodney Hupp ("Defendant Hupp") is the former Police of Chief for the City of Marietta, Ohio. On or around July 9, 2021, Defendant Hupp announced his retirement from the Marietta Police Department. Defendant Hupp resides in the state of Ohio. At all relevant times, Defendant Hupp was Plaintiff Warden's direct supervisor. At all relevant times, Defendant Hupp was empowered by Defendant City of Marietta, Ohio to take tangible employment actions against Plaintiff Warden.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

3.     Defendant City of Marietta ("Defendant City") is a municipal corporation under Article XVIII of the Ohio Constitution, and a "person" subject to sit within the meaning of 42 U.S.C. § 1983. The City operates and supervises the Marietta Police Department ("MPD"), which employed both Plaintiff Warden and Defendant Hupp during the time of the allegations set forth in this Complaint.

## IV.     JURISDICTION AND VENUE

4.     This action arises under the United States Constitution as applied to state and local authorities through 42 U.S.C. § 1983.

5.     This action arises under various Ohio state laws, including the Ohio Civil Rights Act (O.C.R. § 4112 *et seq*.); this Court has jurisdiction to hear this case pursuant to O.R.C. § 2743.03.

## V.     NOTICE OF RIGHT TO SUE

6.     Plaintiff has not yet received a right to sue letter from the U.S. Equal Employment Opportunity Commission ("EEOC") in connection with Plaintiff's complaints of sexual harassment/gender discrimination/hostile work environment/ and retaliation against the Defendant City of Marietta, Ohio and will amend this Complaint to include the right to sue letter upon receipt.

## VI.     FACTS

7.     As set forth in the paragraphs below, Plaintiff Warden was subjected to sexual harassment, gender discrimination, and a hostile work environment during her employment with Defendant the City of Marietta as a police officer with the Marietta Police Department.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

8.      At all relevant times, Defendant City was the employer of both Plaintiff Warden and Defendant Hupp.

9.      Because Defendant Hupp was Plaintiff Warden's Supervisor, Defendant City is strictly liable for Defendant Hupp's acts of harassment and/or discrimination against Plaintiff Warden.

10.     Throughout the duration of Plaintiff's employment with Defendant City, Defendant Hupp sexually harassed and otherwise discriminated against Plaintiff because of her sex and/or gender.

11.     Defendant City's investigation of Plaintiff's complaints against Defendant Hupp substantiated that Defendant Hupp did subject to Plaintiff Warden to sexual harassment.

**A. Defendant Hupp's sexual harassment and gender discrimination**

12.     Shortly after Plaintiff was promoted to Sergeant, Defendant Hupp told her that he would not promote her to Administrate Sergeant because it would look like they were "fucking."

13.     Defendant Hupp repeatedly used the phrase "C U next Tuesday" to address Plaintiff in the workplace. The phrase is an acronym for the word "cunt."

14.     Defendant Hupp repeatedly told Plaintiff and other employees of Defendant City that Plaintiff needed to be in a knock-down "bloody" fight or to be "beat down" so that she would know what it is like to be a "real cop." Dispatcher Toni Roach confronted Defendant Hupp about these statements.

15.     Defendant Hupp told Plaintiff that she could not handle her position during the night shift because she is a woman. Defendant Hupp told Plaintiff that her

subordinate male officers would not follow her lead because she "coddles" her men and is "matronly."

16.     Defendant Hupp often told Plaintiff that he wished she was a man so he could punch her in the face. He said this in front of other officers, because of her gender, to demean and intimidate her, and to lower her authority.

17.     Defendant Hupp often asked Plaintiff if she was on her period. He told her that he could tell when a woman was on her period because he could smell it on a woman's breath.

18.     In or around September 2019, during an in-house training session on AR-15 rifle procedures, Defendant Hupp told numerous patrolmen (employees of Defendant City) that to clear a rifle malfunction they should jam their fingers into the magazine like it was "Katie," referring to Plaintiff, on prom night.

19.     Defendant Hupp repeatedly told employees that he wanted to change the department issued uniform because of how Plaintiff's butt looked in the uniform pants.

20.     Defendant Hupp did not consider Plaintiff for the Administrative Sergeant position or for the Detective Bureau despite Plaintiff's request to be considered and despite Plaintiff being the most qualified individual for those positions.

21.     During Defendant City's investigation of Plaintiff's complaint, the investigator asked Defendant Hupp if he believed he had violated the expectations set forth in City of Marietta's Police Department's Discriminatory Harassment Policy. In response, Defendant Hupp stated, "have I violated this? I would say so."

**B. Defendant City's deliberate indifference towards Plaintiff's report of Defendant Hupp's sexual harassment and gender discrimination**

22.     In or around January 11, 2021, Plaintiff spoke to Defendant City's Mayor, Josh Schlicher, about the harassment and discrimination she was experiencing. Specifically, Plaintiff told Schlicher about the comments Defendant Hupp made during rifle training. Mayor Schlicher took no steps to address the harassment.

23.     In or around March 16, 2021, Plaintiff filed a formal complaint with the City of Marietta Safety Service Director Steve Wetz. Assistant Safety-Service Director/Human Resources Director Jeff Skinner and Union Representative Tyson Estes were also at the meeting. After filing the formal complaint, the City of Marietta prepared an Investigation Report.

24.     The Investigation Report substantiated Plaintiff's complaints and determined that Defendant Hupp did in fact harass Plaintiff in violation of Defendant City's policy.

**C. Defendant Hupp's witness intimidation and retaliatory actions against Plaintiff following her complaint to Defendant City**

25.     A no-contact order between Plaintiff and Defendant Hupp was issued following the initiation of Defendant City's investigation into Plaintiff's complaints of sexual harassment and gender discrimination.

26.     At the onset of Defendant City's investigation into Plaintiff's complaint, Defendant Hupp was given directives to not discuss Plaintiff's complaint with any officer.

27.     Despite being given a directive to not discuss Plaintiff's Complaint with other officers, on or around Defendant Hupp attempted to speak with Staff Administrative Sergeant Rhett Walters about Plaintiff's complaint.

28.     On or around March 31, 2021, Defendant Hupp attempted to speak with Ohio Police Department Shift Sergeant Errol Kramer about Plaintiff's complaint. Defendant Hupp asked Kramer "about trust" and asked him if there was "anything he wanted to tell" Defendant Hupp, alluding to Plaintiff's complaint and the subsequent investigation.

29.     Sergeant Ryan Huffman told Defendant City's investigator that shortly after Plaintiff's complaint to Defendant City was filed, Defendant Hupp called him into his office and asked Huffman "what is she [Plaintiff Warden] trying to get out of this [complaint]?"

30.     The conversations Defendant Hupp initiated with Sergeant Walters, Sergeant Kramer, and Sergeant Huffman violated the directives he had been given to not discuss Plaintiff's complaint with other officers.

31.     Defendant City's investigator concluded that Defendant Hupp's conversations with Sergeants Walters, Kramer, and Huffman could be perceived as witness intimidation.

## D. Defendant City retaliates against Plaintiff by denying Plaintiff the opportunity for promotion

32.     Following Plaintiff Warden's complaint against Defendant Hupp, Defendant Hupp retired from his position as Chief of Police for Defendant City of Marietta, Ohio, leaving a vacancy for the position of Defendant City's Chief of Police.

33.     When a vacancy of this nature is opened, the City is obligated to provide applicants with an opportunity to take

34.    a promotional exam should be given so that multiple qualified individuals have an opportunity to compete for the promotion.

35.    In this case, without cause or reason and *after* Plaintiff brought a complaint against Defendant Hupp, Defendant City denied Plaintiff and other officers the opportunity to take a promotional exam to compete for the position of Chief of Police, and instead appointed Aaron Nedeff to the position.

36.    Plaintiff was and is qualified for the position of Chief of Police.

37.    Denying Plaintiff the opportunity to take the promotional exam after Plaintiff brought a complaint against the former Chief of Police amounts to Defendant City retaliating against Plaintiff for bringing a complaint against Defendant City's representative, Defendant Hupp.

38.    Plaintiff Warden and other Marietta Police Department officers have filed a grievance in response to Defendant City's retaliatory suspension of procedure and denial of the opportunity from Plaintiff and other officers to take the promotional exam.

## E.  Defendant City's retaliatory defamation of Plaintiff

39.    Defendant City retained Attorney Jessica Philemond to conduct an investigation in connection with Plaintiff's complaints against Defendant Hupp.

40.    Defendant City made the findings of the investigation public and the investigation was ultimately published in the local press.

41.    In retaliation for bringing a complaint against a city official, Defendant City's investigation report attempts to "throw dirt" on Plaintiff by mischaracterizing her statements and actions during a trial that took place approximately decade ago.

42.     Defendant City's investigation report claims that Plaintiff gave a "false OVI testimony."

43.     The OVI testimony has absolutely no connection to the sexual harassment investigation and was included for the sole purpose of causing harm to Sergeant Warden's reputation.

44.     Defendant City's investigation report claims that Plaintiff "testified under oath that she had made approximately 100 OVI arrests in her career when the number had actually been 15." This accusation is false.

45.     In reality, and contrary to Defendant City's characterization of Plaintiff's testimony, Plaintiff was asked by the prosecutor to estimate how many OVI arrests she had participated in her career. Plaintiff stated that she did not know how many OVI arrests she made or participated in during her then ten-year career.

46.     The inclusion in Defendant City's published investigation report that Plaintiff gave "false OVI testimony" is designed to harm Plaintiff's reputation and standing.

47.     This decade-old issue has not been brought up to Plaintiff for years. It has only now been raised since Plaintiff made a complaint against Defendant Hupp, in an attempt to instill fear in Plaintiff.

**F.  Impact of Defendants' conduct on Plaintiff Warden**

48.     Plaintiff suffered extensive damages as a result of Defendant Hupp's workplace sexual harassment and gender discrimination.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

49.     Defendant Hupp's gender-based discrimination against Plaintiff resulted in Plaintiff not being considered for promotions and opportunities for career advancement that Plaintiff was qualified for.

50.     Defendant Hupp's sexual harassment and gender discrimination created a hostile work environment for Plaintiff, such that she changed her work location and behaviors to avoid Defendant Hupp.

51.     Defendant Hupp's sexual harassment and gender discrimination caused Plaintiff to consider quitting her job.

52.     Defendant Hupp's sexual harassment and gender discrimination caused Plaintiff to undergo medical treatment.

53.     In or around July, 2021, Defendant Hupp announced his retirement from the Chief's position.

54.     When the City's chief of police position became open and available, the City of Marietta failed to consider Plaintiff for the chief of police position and refused to permit Plaintiff to take the chief of police test.

55.     Because of the City's false claims about Plaintiff lying under oath, Plaintiff has now been told by multiple colleagues that she is considered a "Brady" cop.

## VII.   LEGAL CLAIMS

### First Claim for Relief
### Against Defendant City of Marietta, Ohio
### Violation of U.S.C. § 1983, Equal Protection under the Fourteenth Amendment
### (*Monell* Liability)

56.     Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

57.     This claim is brought against Defendant City of Marietta for its Police Department's policies, customs, and procedures and its ratification of, and deliberate indifference to, civil rights violations.

58.     At all times material hereto, Defendant Hupp was an employee and/or agent of the Marietta Police Department, an arm of the City of Marietta, Ohio.

59.     At all relevant times, Defendant Hupp was acting within the course and scope of his employment and within the scope of policies, practices, and customs of the Marietta Police Department and the City of Marietta, Ohio, and in furtherance of the interests of the Marietta Police Department and the City of Marietta, Ohio, and with the consent of Defendant City of Marietta, Ohio.

60.     At all times material hereto, Defendant Hupp was acting under the color of law, as well as under the color of policies, practices, and customs of the Marietta Police Department and Defendant City of Marietta, Ohio. Defendant Hupp deprived Plaintiff Warden of the rights, privileges, and immunities secured to Plaintiff by the Fourteenth Amendment to the United States Constitution and the laws of the United States.

61.     At all material times material hereto, Defendant City of Marietta maintained a policy and practice of permitting Defendant Hupp to sexually harass Plaintiff, discriminate against Plaintiff based on her gender, and deny Plaintiff promotion and career advancement based on her gender.

62.     Defendant City of Marietta was deliberately indifferent to Defendant Hupp's harassing and discriminatory behavior, allowing Defendant Hupp to remain employed in a supervisory position over Plaintiff after Plaintiff made a report to Defendant City of Marietta outlining the harassment and discrimination.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

63. Defendant City retaliated against Plaintiff by denying her the opportunity to take the promotional exam for a vacant position that Plaintiff was qualified for.

64. Defendant City retaliated against Plaintiff by attempted to intimidate her by "throwing dirt" on Plaintiff in Defendant City's investigation report that Defendant City made public following Plaintiff's complaint regarding Defendant Hupp.

65. As such, Defendant City of Marietta maintained a policy and practice of deliberate indifference toward Plaintiff Warden's civil rights.

66. Defendant City of Marietta's policy of not permitting Warden or others to apply for the Chief position was and continues to be discriminatory.

67. Defendant City of Marietta, Ohio's policies, practices, customs, and actions actually and proximately caused and enabled violations of Plaintiff Warden's constitutional rights.

68. Defendant City of Marietta, Ohio's conduct towards Plaintiff as described herein was malicious, oppressive, or in reckless disregard of Plaintiff's rights such that punitive damages are appropriate.

69. As a result of the foregoing, Plaintiff suffered extensive damages.

70. By agreement of the parties, the running of the statute of limitations for Plaintiff's claims against the Defendants was tolled from July 13, 2021 – February 1, 2022. (See Exhibit 1, Fifth Tolling Agreement).

<u>**Second Claim for Relief**</u>
**Against Defendant Hupp in his Individual Capacity**
**Violation of U.S.C. § 1983, Equal Protection under the Fourteenth Amendment**
**(Sexual Harassment)**

71.     Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

72.     Under the Fourteenth Amendment, Plaintiff has the right as a public employee to personal security and the Equal Protection of Laws.

73.     Defendant Hupp sexually harassed Plaintiff Warden while Defendant Hupp was a state actor acting in his individual capacity under the color of state law.

74.     Defendant Hupp subjected Plaintiff to violations of her right to the Equal Protection of Laws by subjecting her to sexual harassment throughout her career with Marietta Police Department.

75.     Defendant Hupp subjected Plaintiff to sexual harassment that was so severe and objectively offensive that it violated Plaintiff's constitutional rights.

76.     Defendant Hupp was acting in a direct supervisory and evaluative role over Plaintiff when he sexually harassed her.

77.     Defendant Hupp's conduct constitutes disparate treatment of female employees and had a disparate impact on female employees, namely Plaintiff.

78.     Plaintiff has had her life disrupted, professional standing and reputation negatively affected, and has personally suffered emotional and psychological distress, all as a direct and proximate result of Defendant Hupp's inappropriate behavior.

79.     Defendant Hupp's conduct as described herein violated Plaintiff's clearly established constitutional rights of which a reasonable person would have known.

80.     Defendant Hupp's conduct as described herein was malicious, oppressive, or in reckless disregard of Plaintiff's rights such that punitive damages are appropriate.

81.     As a result of the foregoing, Plaintiff has suffered extensive damages.

## Third Claim for Relief
### Against Defendant Hupp in his Individual Capacity
### Violation of U.S.C. § 1983, Equal Protection under the Fourteenth Amendment
### (Hostile Work Environment)

82.     Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

83.     Under the Fourteenth Amendment, Plaintiff has the right as a public employee to personal security and the Equal Protection of Laws.

84.     Defendant Hupp subjected Plaintiff Warden to a hostile work environment while Defendant Hupp was a state actor acting in his individual capacity under the color of state law.

85.     The hostile work environment that Defendant Hupp subjected Plaintiff to was so severe and objectively offensive that it violated Plaintiff's constitutional rights.

86.     Defendant Hupp's conduct was of a sexual nature and was unwelcome and sufficiently severe or pervasive from both a subjective and objective viewpoint such that the conduct had the purpose or effect of unreasonably interfering with Plaintiff's work performance or creating an intimidating, hostile, or offensive environment for working.

87.     The environment created by Defendant Hupp's conduct was hostile based on the circumstances, including but not limited to, the frequency of the conduct, the nature and severity of the conduct, the relationship between the parties, the location and context in which the conduct occurred, and the physically threatening and/or humiliating nature of the conduct.

88.     Defendant Hupp's conduct towards Plaintiff as described herein was malicious, oppressive, or in reckless disregard of Plaintiff's rights such that punitive damages are appropriate.

89.     As a result of the foregoing, Plaintiff suffered extensive damages.

### Fourth Claim for Relief
### Against Defendant Hupp in his Individual Capacity
### Violation of U.S.C. § 1983, Equal Protection under the Fourteenth Amendment
### (Gender-Based Discrimination)

90.     Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

91.     Under the Fourteenth Amendment, Plaintiff has the right as a public employee to personal security and the Equal Protection of Laws.

92.     Defendant Hupp discriminated against Plaintiff Warden based on her gender while Defendant Hupp was a state actor acting in his individual capacity under the color of state law.

93.     Defendant Hupp subjected Plaintiff to disparate and discriminatory treatment based on her gender that was so severe and objectively offensive that it violated Plaintiff's constitutional rights.

94.     Most egregiously, Defendant Hupp denied Plaintiff promotions and opportunities for career advancement based on Plaintiff's gender.

95.     Defendant Hupp's discriminatory conduct towards Plaintiff as described herein was malicious, oppressive, or in reckless disregard of Plaintiff's rights such that punitive damages are appropriate.

96.     As a result of the foregoing, Plaintiff suffered extensive damages.

## Fifth Claim for Relief
## Against Defendant City of Marietta, Ohio
## Violation of Title VII
## (Sexual Harassment/Hostile Work Environment, Retaliation)

97.     Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

98.     Plaintiff Warden is a female and a member of a protected class.

99.     At all times material hereto, Defendant Hupp was Plaintiff's direct supervisor and had the power to take tangible employment action against Plaintiff.

100.     While employed as Plaintiff's direct supervisor, Defendant Hupp made unwelcome and unwanted sexually harassing comments towards Plaintiff based on her gender.

101.     The hostile work environment that Defendant Hupp subjected Plaintiff to was so severe and objectively offensive that it violated Plaintiff's constitutional rights.

102.     Defendant Hupp's conduct was of a sexual nature and was unwelcome and sufficiently severe or pervasive from both a subjective and objective viewpoint such that the conduct had the purpose or effect of unreasonably interfering with Plaintiff's work performance or creating an intimidating, hostile, or offensive environment for working.

103.     The environment created by Defendant Hupp's conduct was hostile based on the circumstances, including but not limited to, the frequency of the conduct, the nature and severity of the conduct, the relationship between the parties, the location and context in which the conduct occurred, and the physically threatening and/or humiliating nature of the conduct.

104.    Defendant City of Marietta's conduct towards Plaintiff as described herein was malicious, oppressive, or in reckless disregard of Plaintiff's rights such that punitive damages are appropriate.

105.    The allegations set forth above constitute sexual harassment and hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

106.    Accordingly, Defendant City of Marietta, Ohio has violated Plaintiff's rights protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

107.    As a result of the foregoing, Plaintiff has suffered extensive damages, including but not limited to lost employment opportunities and associated wages and earnings.

108.    Plaintiff has perfected a charge with the EEOC (Charge #532-2021-01337) and will amend this complaint to add the right to sue letter upon receipt.

**Sixth Claim for Relief**
**Against Defendant City of Marietta, Ohio**
**Violation of Title VII**
**(Disparate Treatment, Gender-Based Discrimination)**

109.    Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

110.    Plaintiff Warden is a female and a member of a protected class.

111.    At all times material hereto, Defendant Hupp was Plaintiff's direct supervisor and had the power to take tangible employment action against Plaintiff.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

112. Defendant Hupp subjected Plaintiff to disparate and discriminatory treatment based on her gender that was so severe and objectively offensive that it violated Plaintiff's constitutional rights.

113. Most egregiously, Defendant Hupp denied Plaintiff promotions and opportunities for career advancement based on Plaintiff's gender.

114. Defendant Hupp's discriminatory conduct towards Plaintiff as described herein was malicious, oppressive, or in reckless disregard of Plaintiff's rights such that punitive damages are appropriate.

115. Defendant Hupp's conduct constitutes disparate treatment and gender-based discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

116. Accordingly, Defendant City of Marietta, Ohio has violated Plaintiff's rights protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

117. As a result of the foregoing, Plaintiff has suffered extensive damages, including but not limited to lost employment opportunities and associated wages and earnings.

118. Plaintiff has perfected a charge with the EEOC (Charge #532-2021-01337) and will amend this complaint to add the right to sue letter upon receipt.

### Seventh Claim for Relief
### Against Defendant City of Marietta, Ohio
### Violation of Title VII
### (Retaliation)

119. Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

120. Plaintiff Warden is a female and a member of a protected class.

121. Plaintiff opposed Title VII-violating employment practices by reporting Defendant Hupp's sexual harassment, gender-based discrimination, and the hostile work environment she was subjected to by Defendant Hupp to Defendant City of Marietta, Ohio.

122. Defendant City retaliated against Plaintiff by denying her the opportunity to take the promotional exam for a vacant position that Plaintiff was qualified for.

123. Defendant City retaliated against Plaintiff by defaming Plaintiff in Defendant City's investigation report that Defendant City made public following Plaintiff's complaint regarding Defendant Hupp.

124. Defendant City's conduct constitutes retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3.

125. Accordingly, Defendant City of Marietta, Ohio has violated Plaintiff's rights protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3.

126. As a result of the foregoing, Plaintiff has suffered extensive damages, including but not limited to lost employment opportunities and associated wages and earnings.

127. Plaintiff has perfected a charge with the EEOC (Charge #532-2021-01337) and will amend this complaint to add the right to sue letter upon receipt.

**Eighth Claim for Relief**
**Against Defendant City of Marietta, Ohio**
**Violation of the Ohio Civil Rights Act, O.R.C. § 4112.02 (A) – Unlawful Discriminatory Practices**
**(Gender-Based Discrimination)**

128.   Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

129.   This claim is brought against Defendant City of Marietta, Ohio, as at all times material hereto, Defendant Hupp was acting as Defendant City of Marietta's agent and representative.

130.   O.R.C. § 4112.02(A) provides that it shall be an unlawful discriminatory practice for "any employer, because of. . . sex. . . of any person. . . to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

131.   Defendant Hupp subjected Plaintiff to disparate and discriminatory treatment based on Plaintiff's gender that was so severe and objectively offensive that it violated O.R.C. § 4112.02 (A).

132.   Defendant City of Marietta denied Plaintiff promotions and opportunities for career advancement based on Plaintiff's gender.

133.   Defendants' discriminatory conduct towards Plaintiff as described herein was malicious, oppressive, or in reckless disregard of Plaintiff's rights such that punitive damages are appropriate.

134.   As a result of the foregoing, Plaintiff has suffered extensive damages.

**Ninth Claim for Relief**
**Against Defendant Hupp**
**Ohio Civil Rights Act, O.R.C. § 4112.02 (I) and (J)**
**(Gender-Based Retaliation and Discrimination)**

135.   Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

136.     Defendant Hupp subjected Plaintiff to retaliation and disparate and discriminatory treatment based on her gender that was so severe and objectively offensive that it violated O.R.C. § 4112.02.

137.     Defendant Hupp denied Plaintiff promotions and opportunities for career advancement based on Plaintiff's gender.

138.     Defendants' retaliatory and discriminatory conduct towards Plaintiff as described herein was malicious, oppressive, or in reckless disregard of Plaintiff's rights such that exemplary damages are appropriate.

139.     As a result of the foregoing, Plaintiff has suffered extensive damages.

**Tenth Claim for Relief**
**Against Defendant Hupp**
**Intentional Infliction of Emotional Distress**

140.     Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

141.     Defendant Hupp was employed in a supervisory position over Plaintiff.

142.     Defendant Hupp intentionally caused mental and/or emotional injuries to Plaintiff and/or recklessly disregarded the high probability that his actions would likely result in mental and/or emotional injury and distress to Plaintiff.

143.     Defendant Hupp's conduct was the proximate cause of Plaintiff's serious emotional distress.

144.     Defendant Hupp, while engaging in the aforementioned conduct, did recklessly inflict and proximately cause substantial mental and emotional distress, indignity, and humiliation upon Plaintiff.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

145.     As a direct and proximate result of the foregoing intentional infliction of emotional distress by Defendant Hupp, Plaintiff has sustained severe and substantial emotional and/or mental distress and damages and is entitled to recover compensatory damages and other damages related thereto.

## Eleventh Claim for Relief
### Against Defendant Hupp
### Negligent Infliction of Emotional Distress

146.     Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

147.     Defendant Hupp was employed in a supervisory position over Plaintiff.

148.     Defendant Hupp negligently caused mental and/or emotional injuries to Plaintiff and/or recklessly disregarded the high probability that his actions would likely result in mental and/or emotional injury and distress to Plaintiff.

149.     Defendant Hupp's conduct was the proximate cause of Plaintiff's serious emotional distress.

150.     Defendant Hupp, while engaging in the aforementioned conduct, did recklessly inflict and proximately cause substantial mental and emotional distress, indignity, and humiliation upon Plaintiff.

151.     As a direct and proximate result of the foregoing negligent infliction of emotional distress by Defendant Hupp, Plaintiff has sustained severe and substantial emotional and/or mental distress and damages and is entitled to recover compensatory damages and other damages related thereto.

## Twelfth Claim for Relief
### Against Defendant City of Marietta
### Negligent Supervision

152.    Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

153.    At all material times, Defendant Hupp was employed by Defendant City and was under Defendant City's direct supervision, employ, and control when he committed the wrongful acts alleged herein.

154.    Defendant City, by and through its agents, servants, and/or employees, failed to supervise Defendant Hupp so that he did not sexually harass or discriminate against Plaintiff.

155.    As a direct and proximate result of Defendant City's negligent supervision of Defendant Hupp, Plaintiff has suffered, and continues to suffer, emotional distress, embarrassment, and humiliation. She has and will continue to lose wages that would have been earned if she had been promoted.

156.    As a result of the foregoing, Plaintiff has suffered extensive damages.

**<u>Thirteenth Claim for Relief</u>**
**Against Defendant City of Marietta**
**Negligent Retention**

157.    Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

158.    At all material times, Defendant Hupp was employed by Defendant City and was under Defendant City's direct supervision, employ, and control when he committed the wrongful acts alleged herein.

159.    Defendant City was negligent in retaining Defendant Hupp as an employee after Plaintiff had made a formal complaint to Defendant City regarding Defendant Hupp's continuous sexual harassment and gender discrimination of Plaintiff.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

160.    As a direct and proximate result of Defendant City's negligent retention of Defendant Hupp, Plaintiff has suffered, and continues to suffer, emotional distress, embarrassment, and humiliation. She has and will continue to lose wages that would have been earned if she had been promoted. Additionally, the harassment and discrimination has caused a strain on Plaintiff's marriage.

161.    As a result of the foregoing, Plaintiff has suffered extensive damages.

### Fourteenth Claim for Relief
### Against Defendant City of Marietta
### Defamation Per Se

162.    Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

163.    Defendant City has published an investigation report, dated August 10, 2021, that included false and defamatory statements about Plaintiff Warden. Specifically, Defendant City's investigation report states that Plaintiff gave "false OVI testimony" approximately a decade ago.

164.    The statement in the report that Plaintiff gave "false OVI testimony" was made intentionally and/or with reckless disregard to its falsity.

165.    The statement in the report that Plaintiff gave "false OVI testimony" was included in the report in order to instill fear in Plaintiff and to harm Plaintiff's reputation.

166.    The statement that Plaintiff gave a "false OVI testimony" is untrue.

167.    By accusing Plaintiff of giving "false OVI testimony" under oath, Defendant City impugned Plaintiff's professional reputation.

168. As a police officer, honesty and integrity are essential to Plaintiff's professional success. Defendant City knew this when Defendant City published false statements regarding a decade-old OVI case that is unrelated to the sexual harassment that was the subject matter of the 2021 investigation.

169. As a result of the false attacks on Plaintiffs professional reputation, Plaintiff has been damaged as a matter of law.

170. As a result of the foregoing, Plaintiff has suffered extensive damages.

## VIII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Warden respectfully demands judgment against Defendants and asks the Court for the following relief:

> (a) Declare that Defendants' acts and conduct constitute violations of federal law;
>
> (b) Declare that Defendants' acts and conduct constitute violations of Ohio law;
>
> (c) Award Plaintiff full compensatory damages, economic and non-economic, including, but not limited to, damages for pain and suffering, mental anguish, emotional distress, humiliation, and inconvenience that Plaintiff has suffered and is reasonably certain to suffer in the future;
>
> (d) Award Plaintiff all statutory punitive damages;
>
> (e) Award Plaintiff exemplary damages for Defendants' violations of federal law;

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

(f) Award Plaintiff exemplary damages for Defendants' violations of Ohio law;

(g) Award Plaintiff pre-judgment and post-judgment interest at the highest lawful rate;

(h) Award Plaintiff her reasonable attorneys' fees and all other costs of this suit; and

(i) Award all other relief in law or equity to which Plaintiff is entitled and that the Court deems equitable, just, or proper.

## IX.    JURY DEMAND

Plaintiff Warden demands trial by jury on all counts of the Complaint.

DATED: February 3, 2022                          Respectfully submitted,

    s/ *Michael L. Fradin*
    Michael L. Fradin, Attorney at Law
8 N. Court St. Suite 403
Athens, Ohio 45701
P: 847-986-5889
F: 847-673-1228
mike@fradinlaw.com